liPLOTKIN, Judge.
In this case, defendant, The Grif-Dun Group, Inc. (“Grif-Dun”), appeals the trial court’s entry of summary judgment in favor of plaintiff, Torco Oil Company (“Torco”), dismissing Grif-Dun’s reeonventional demand. We affirm.

FACTS

On June 13, 1991, Torco entered into a commercial lease with Grif-Dun whereby Torco leased the building at 418 Common Street to Grif-Dun for the period June 15, •1991, to December 15,1991. Included within the lease was an option to purchase in favor of Grif-Dun. The option provided in pertinent part:
28.2 Option Period. The Option is granted for a period (the “Option Period”), which shall commence on the date of the execution of this Lease, and shall expire upon the effective termination of the Lease.
28.3 Exercise of Option. In order to exercise this Option, Lessee shall notify Lessor of its intent to exercise the Option by certified mail, return receipt requested, deposited in the United States Mail, postage prepaid, or via hand delivery, overnight courier, or facsimile transmission, and received within the Option Period, addressed to Lessor as set forth [above].
* * * * * *
1228.5 Terms of the Agreement. In the event the Option is exercised, the agreement regarding the purchase of the Leased Premises shall be subject to the following terms and conditions, to wit:
A) Deposit. Immediately upon Lessee’s exercise of this Option, Lessee shall deposit with Lessor or Lessor’s agent the sum of SIX THOUSAND SIX HUN *1161 DRED AND NO/lOO ($6,600.00) DOLLARS in the form of THREE THOUSAND THREE HUNDRED AND NO/ 100 ($3,300.00) DOLLARS CASH and a demand promissory note in the amount of THREE THOUSAND THREE HUNDRED AND NO/100 ($3,300.00) DOLLARS. This deposit is to be non-interest bearing.
B) Purchase Price. The purchase price for the Leased Premises shall be the sum of ONE HUNDRED SIXTY THOUSAND AND NO/100 ($160,000.00) DOLLARS, conditioned upon the ability of the Lessee to borrow upon the Leased Premises as security the sum of ONE HUNDRED TWENTY THOUSAND AND NO/100 ($120,000.00) DOLLARS by a mortgage loan or loans at a rate of interest not to exceed ELEVEN AND ONE-HALF (11.5%) PERCENT per annum, interest and principal payable in equal monthly installments over a period of thirty (30) years.
In the event the loan stipulated above is unobtainable within forty-five (45) days of the exercise of said option by the Lessee, when, within five (5) days from the date of Lessor’s receipt of written notice of same from Lessee, Lessor or Lessor’s agent shall return to Lessee its deposit in the amount of THREE THOUSAND THREE HUNDRED AND NO/100 ($3,300.00) DOLLARS CASH and the demand promissory note in the amount of THREE THOUSAND THREE HUNDRED AND NO/100 ($3,300.00) DOLLARS. In such event, Lessee’s Option to Purchase shall terminate without any further action or notice on the part of the Lessor and/or Lessee.
[[Image here]]
F) Act of Sale.
(i) The Act of Sale shall be passed within thirty (30) days of Lessee’s obtaining financing as set forth ... above, before a Notary Public selected by Lessee, at a place and time designated by Lessee in a written notice of Lessor.
Grif-Dun took possession of the premises on or about June 15, 1991, and remained in possession until June 23,1992. On that date, Torco filed in Orleans Parish Civil District Court a Petition for Writ of Sequestration and for damages for breach of lease. The trial court issued a Writ of Sequestration that was served on Grif-Dun on June 24, 1992. Upon labeing served with the writ, Grif-Dun posted a bond with the court to secure sequestration. Grif-Dun thereafter remained in possession of the building until October 18, 1993, when it finally vacated the building.
In response to Torco’s petition, Grif-Dun filed an answer and reconventional demand asking that the court grant specific performance of the option. Torco answered the reconventional demand, denying Grif-Dun’s allegations. This matter remained inactive pending the conclusion of a related eviction proceeding that Torco originally commenced in First City Court. In that matter, the First City Court held that although the lease between the parties had expired by its own terms, it had nevertheless been tacitly recon-ducted by the parties. On appeal, this court affirmed. Torco Oil Co. v. Grif-Dun Group, Inc., 617 So.2d 102 (La.App. 4th Cir.), writ denied, 623 So.2d 1341 (La.1993). In that decision, this court concluded that the lease had terminated as of July 31, 1992.
Once the eviction proceedings had concluded, Torco filed a Motion for Summary Judgment in this case seeking dismissal of Grif-Dun’s reconventional demand for specific performance and praying for past due rents. Grif-Dun opposed Torco’s motion, arguing that Torco had breached the option agreement by not honoring Grif-Dun’s right to exercise the option. On December 14, 1993, the trial court granted Torco’s motion in part and denied it in part. Specifically, the trial court refused to grant Torco’s motion seeking an award of alleged past due rents and that Grif-Dun was not entitled to specific performance of the option. Grif-Dun has appealed the dismissal of its demand for specific performance. Torco has not appealed the trial court’s holding that it was not entitled to past due rents; accordingly, that decision is now final.

ISSUE

The only issue for consideration in this case is whether the trial court was correct in *1162 granting Torco’s motion for summary judgment, thereby dismissing Grif-Dun’s demand for specific performance of the option.

\ ¿DISCUSSION

The standard of review applicable to this case was explained by the court in Transworld Drilling Co. v. Texas General Resources, Inc., 604 So.2d 586 (La.App. 4th Cir.1992), as follows:
Appellate courts apply a de novo standard of review when considering trial court judgments on motions for summary judgment, using the same criteria applied by trial court to determine whether summary judgment is appropriate. Thus, the appellate court must determine whether “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.” La.C.C.P. art. 966(B). It follows from the above standard that a motion for summary judgment may be granted only when the mover has proven both of the following elements: (1) no genuine issues of material fact exist, and (2) the mover is entitled to judgment as a matter of law. All evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion; all allegations of the party opposing the motion are taken as true and all doubt must be resolved in his favor. In determining whether the movant has satisfied his burden of showing that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law, documents supporting the movant’s position are closely scrutinized, while the opposing documents are treated indulgently. Granting of the motion may not be based on the court’s belief that the party opposing the motion has little chance of succeeding at trial.
Id. at 589-90 (citations omitted).
Although the trial judge offered no written reasons for his granting of Torco’s Motion for Summary Judgment, Grif-Dun asserts that the judge’s comments from the bench indicate that he relied upon this court’s earlier decision in the eviction proceeding. Grif-Dun alleges that reliance on that decision is misplaced because it dealt solely and exclusively with questions related to eviction and did not address any matters relating to the option. Specifically, Grif-Dun argues that the trial court falsely relied upon a determination that the lease had been terminated as of July 31, 1993.
Although the opinion of this court was concerned specifically with the propriety of Torco’s eviction of Grif-Dun, under the law of the case doctrine, any factual issues decided by that court remain binding on this court. As recently noted by the court in Coldwell Banker J. Wesley Dowling & Assocs., Inc. v. City Bank & Trust of Shreveport, 25684 (La.App. 2 Cir. 3/30/94); 634 So.2d 959:
| gUnder the “law of the case” doctrine, upon a second appeal, an appellate court will not reconsider its earlier ruling in the same case. That policy applies against those parties involved in the litigation at the time of the prior decision, and who thus have had their day in court. Reasons behind the precept include: avoiding indefinite relitigation of the same issue; obtaining consistent results in the same case; fairness to the involved parties; and affording one opportunity for argument and decision on the issue.
Id. at 961 (citations omitted). However, the law of the ease doctrine is not inflexible and may be inapplicable where, for example, the prior decision is manifestly erroneous. Dodson v. Community Blood Ctr., 633 So.2d 252, 255 (La.App. 1st Cir.1993). Nevertheless, we find no reason to depart from the earlier decision of this panel that concluded that the lease between Torco and Grif-Dun terminated on July 31, 1992. Therefore, in order to find that the trial court correctly granted summary judgment in this proceeding, we must find that Grif-Dun did not validly exercise the option by July 31, 1992, the effective date on which the lease terminated and the option expired.
In determining whether Grif-Dun validly exercised its option under the lease, we are guided by the Louisiana Supreme Court’s decision in Louisiana State Bd. of *1163 Educ. v. Lindsay, 227 La. 553, 79 So.2d 879 (1954). In that case, the court established a two-part test for determining whether an option has been validly exercised: “[N]ot only must an option to buy immovable property ‘be evidenced by a written instrument’ but the unqualified acceptance thereof be evidenced in writing, giving full recognition to and in accordance with the terms and conditions of the proposal, and formally exercised and tendered to the proposer prior to the expiration of the stipulated time.” Id. at 855. Stated otherwise, in order to exercise an option, two conditions must be met. First, there must be an unconditional written acceptance of the option fully accepting and agreeing to all terms and conditions of the option. Second, the option must be formally exercised and tendered to the proposer prior to termination of the option period. This test was reaffirmed by this court as recently as five years ago. See Major Commodity Corp. v. Cunningham, 555 So.2d 525, 527-28 (La.App. 4th Cir.1989).
^Applying that standard to the facts of this case, we find that Grif-Dun did not validly exercise its option prior to July 31, 1992. Our review of the correspondence between Grif-Corp and Torco shows the following:
On June 26, 1992, Michael C. Darnell, then representing Grif-Dun, wrote to William J. Hurley, counsel for Torco, stating that Grif-Dun “has since the latter part of 1991 shown its intent to exercise the option to purchase and acquire the leased premises located at 418 Common Street.” Apparently, however, that intent was impeded because of disputes between the parties over a common fire wall in the building. Included within this letter was an Offer to Purchase by Grif-Dun, which counsel admitted “modified slightly (in light of recent circumstances)” the terms of the original option.
Our review of this document discloses otherwise. The Offer to Purchase made significant changes in the terms of the original option, including: no immediate tender of cash and a promissory note from Grif-Dun, Grif-Dun would receive a credit for monies it claimed were owed to it by Torco, and the imposition of new conditions precedent to the sale such as an environmental assessment and a soil boring test. As such, Grif-Dun did not unconditionally accept the option, nor did it agree to all of the terms and conditions of the option. Therefore, this letter does not constitute an effective exercise of the option as required by Lindsay.
On July 29, 1992, Les Matthews, President and Chief Executive Officer of Grif-Dun, wrote to William S. Johnson, Vice-President of Torco, stating his belief that Grif-Dun has “sufficiently exercise” the option. Matthews also wrote that if there was any dispute over the matter, that his letter constituted Grif-Dun’s acceptance of the option. There is no evidence, however, that Grif-Dun tendered the $3300 cash or the $3300 demand note as clearly required by the terms of the option. To that extent, this letter also does not constitute an effective exercise of the option. See Major Commodity Corp. v. Cunningham, 555 So.2d 525, 528 (La.App. 4th Cir.1989) (holding that plaintiff had not validly exercised option when it did not comply with the terms of the option contract).
In an attempt to avoid the stringent rules of Lindsay, Grif-Dun argues that Tor-co’s actions manifested its intent not to allow Grif-Dun to exercise the option. Accordingly, Grif-pun7 maintains that any further actions on its part would have been “vain and useless acts,” which the law does not require one to perform. However, the cases Grif-Dun cites in support of this claim are all distinguishable from this case and are thus inapposite. Additionally, our own research on this issue failed to disclose any cases that would give credence to Grif-Dun’s argument.[1] Therefore, we are compelled to reject Grif-Dun’s “vain and useless” argument.
*1164 For the foregoing reasons, we affirm the decision of the trial court.

AFFIRMED.

. Parenthetically, we note that this is not a case like Pittman v. Pomeroy, 552 So.2d 983 (La. App.2d Cir.1989). In that case, the purchaser offered to tender the purchase price as required by the option. However, the sellers had indicated that they would not accept the money, even if tendered in full by the purchaser. Under those circumstances, the court held that the purchaser was not required to perform a "vain and useless act.” In contrast, in this case there is a com *1164 plete absence of any evidence indicating that Torco would not have accepted Grif-Dun’s tender of $6600 as required by the option. To that extent, Pittman is not controlling.